UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**MARY FRANCES J.,**[1]

    **Plaintiff,**

v.

    Case No. 3:21-cv-00171
    Magistrate Judge Norah McCann King

**COMMISSIONER OF SOCIAL SECURITY,**[2]

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Mary Frances J. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. This matter is now before the Court, with the consent of the parties, *see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 11, *Defendant's Memorandum in Opposition*, ECF No. 13, *Plaintiff's Reply*, ECF No. 14, and the *Certified Administrative Record*, ECF No. 8. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court denies *Plaintiff's Statement of Errors* and affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.

[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

1

I.      PROCEDURAL HISTORY

Plaintiff filed her applications for disability insurance benefits and supplemental security income on March 14, 2019, and March 19, 2019, respectively, alleging that she has been disabled since February 1, 2013, based on a number of physical and mental impairments. *See* R. 253-63, 264-71.[3] The applications were denied initially and upon reconsideration and Plaintiff sought a *de novo* hearing before an administrative law judge. R. 197. Administrative Law Judge ("ALJ") Kevin W. Fallis held a hearing on March 18, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 35-73. In a decision dated June 17, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from February 1, 2013, Plaintiff's alleged disability onset date, through the date of that decision. R. 15-30. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on April 16, 2021. R. 1-6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 22, 2022, the case was reassigned to the undersigned. ECF No. 12. The matter is now ripe for disposition.

II.      LEGAL STANDARD

    A.    **Standard of Review**

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the

---

[3] References to pages as they appear in the Certified Administrative Record will be cited as "R. __."

substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

    **B.**    **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof through step four; at step

five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the

plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 46 years old on her alleged disability onset date. R. 28. She subsequently changed that age category to closely approaching advanced age. *Id.*[4] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2013, her alleged disability onset date. R. 18.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: coronary artery disease; hypertension; diabetes mellitus; peripheral neuropathy; degenerative disc disease; fracture of the right great toe; gastroesophageal reflux disease ("GERD"); major depressive disorder; generalized anxiety disorder; and insomnia. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. *Id.*

At step four, the ALJ found that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she could *occasionally push/pull or operate foot controls*. She could never climb ladders, ropes, or scaffolds. She could occasionally climb ramps and stairs. She could occasionally balance, stoop, kneel, crouch, and crawl. *She could never perform overhead reaching with the right dominant upper extremity.* She should avoid concentrated exposure to extreme cold, heat, and to vibration. She should avoid concentrated use of hazardous moving machinery. She should avoid all exposure to unprotected heights. The claimant could perform simple, routine, repetitive tasks in a work environment free of fast-paced production requirements. She could make simple work-related decisions and

---

[4] Although there was some discussion at the administrative hearing of amending Plaintiff's disability onset date to her 50th birthday, R. 42, the record does not reflect any such amendment.

>adapt to routine workplace changes. She could occasionally interact with the public, co-workers, and supervisors.

R. 21 (emphasis added). The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a general inspector, dietary aide, and cook. R. 27.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.,* jobs as a bench assembly, a packer, and an inspector—existed in the national economy and could be performed by Plaintiff. R. 29. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 1, 2013, her alleged disability onset date, through the date of the decision. R. 29.

Plaintiff disagrees with the ALJ's findings at steps four and five of the sequential evaluation, and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Statement of Errors,* ECF No. 11; *Plaintiff's Reply Brief*, ECF No. 14. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Memorandum in Opposition,* ECF No. 13.

## IV.   RELEVANT EVIDENCE

Plaintiff testified at the administrative hearing that she tore her rotator cuff in 2012 and has not worked since. R. 41, 43. It is her heart condition that presents the biggest impediment to full time work. R. 51. "[J]ust doing my housework, I get out of breath, really easy, get lightheaded, have chest pain, tiredness." *Id*. She also suffers neuropathy in her feet, which causes sharp pain; she experiences numbness and tingling in her hands and feet. *Id*. She has undergone three surgeries on her right shoulder but still suffers constant shooting pain and cannot lift it over her head. R. 51-52. She also testified that she has difficulty raising her hand behind and in front

of her as well. R. 60. She can sit, stand, and walk for only five minutes before needing to change positions; she cannot carry the weight of a gallon of milk for two to three hours during an eight-hour day. R. 55.

The ALJ asked the vocational expert to assume an individual with Plaintiff's vocational profile who is

> limited to light work; they could occasionally perform pushing and pulling; *they could occasionally operate foot controls*; they could never climb ladders, ropes, or scaffolds; they could occasionally climb ramps or stairs; occasionally balance, stoop, kneel, crouch, and crawl. . . [and] *could never perform overhead reaching with the right upper extremity*, that is the dominant upper extremity; they would have to avoid concentrated exposure to extreme cold, extreme heat, and vibration; they would have to avoid concentrated use of hazardous moving machinery; they would have to avoid all exposure to unprotected heights. . . .

R. 64-65 (emphasis added).[5] In response, the vocational expert testified that, although this RFC would preclude the performance of all of Plaintiff's past work, such an individual could nevertheless perform the jobs in the light classification specified above. R. 65. The ALJ then engaged in the following colloquy with the vocational expert:

> Q: Ms. Leech, your testimony today, has it been covered by the DOT?
>
> A: Except for topics such as absenteeism, time off-task, proximity to others, production pace, *overhead reaching versus other sorts of reaching*, and on those topics, my opinion's based on my training, education, and professional experience placing people.

*Id.* (emphasis added).

## V.  DISCUSSION

Plaintiff contends that the ALJ "engaged in impermissible speculation when attempting to resolve a conflict in the vocational expert's testimony regarding restrictions using the right

---

[5] The ALJ's hypothetical also included mental limitations, but those limitations are not relevant to the issues presented in this case.

upper extremity," and that the ALJ's RFC determination "contains internal inconsistencies that render the findings inherently contradictory." *Plaintiff's Statement of Errors*, ECF No. 11, PageID# 1444. The Court will address these contentions in turn.

    A.    **The Vocational Expert's Testimony and the DOT**

In determining, at step five of the sequential evaluation, whether a claimant can perform other jobs that exist in significant numbers in the national economy despite that claimant's lessened capacity, *see* 20 C.F.R. §§ 404.1520(g), 416.920(g), an ALJ "will take administrative notice of reliable job information available from various governmental and other publications," including, *inter alia*, the *Dictionary of Occupational Titles* ("the DOT"). 20 C.F.R. §§ 404.1566(d), 416.966(d). Furthermore, an ALJ "may use the services of a vocational expert" in making this determination. 20 C.F.R. §§ 404.1566(e), 416.966(e). However, occupational evidence provided by a vocational expert "generally should be consistent with the occupational information supplied by the DOT." SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). The ALJ has "an affirmative responsibility to ask about any possible conflict between [the vocational expert's testimony] and information provided in the DOT." *Id.* at *4. When there arises an apparent conflict between the vocational expert's testimony and the DOT, the ALJ "must elicit a reasonable explanation for the conflict before relying on" the vocational expert's testimony, *id.* at *2, and "must resolve this conflict before relying on the [expert's testimony] to support a determination or decision that the individual is or is not disabled." *Id.* at *4. Recognizing that the "DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings," *id.* at *3, however, the Ruling authorizes reliance on "[i]nformation about a particular job's requirements. . . from [an expert's] experience. . . ." *Id*. At *2. In short, an ALJ can rely on vocational expert testimony if

the ALJ either ensures that "the evidence does not conflict with the information in the DOT or obtain[s] a reasonable explanation for any conflict." *O'Neal v. Comm'r of Soc. Sec.,* 799 Fed. App'x 313, 317 (6th Cir. 2020) (citing *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 603 (6th Cir. 2009)).

In his decision, the ALJ in this case satisfied this standard. He affirmatively inquired whether the vocational expert's testimony was consistent with the DOT. R. 65. In response, the vocational expert testified that her testimony was not consistent with the DOT as it related to, *inter alia*, "overhead reaching versus other sorts of reaching," but that her opinion in that regard was based on her "training, education, and professional experience placing people." *Id.* Furthermore, the ALJ resolved this discrepancy and explained his reliance on the vocational expert's testimony, as follows:

> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles, as supplemented by the expert's education, training, and experience with regard to the availability of jobs that could be performed despite limitations not necessarily contemplated by the DOT. In particular, the DOT lists how often reaching must be performed in a job, but does not specify the directions in which a person performing the job is required to reach. Therefore, although the claimant's limitation to no overhead reaching with the right upper extremity might appear to conflict with the DOT's specification that these jobs require frequent reaching, the DOT only contemplates reaching in general, and thus it remains possible to not reach overhead and still reach in other directions frequently in order to perform job duties satisfactorily. Because the DOT does not specify the directions in which reaching is required, the expert had to have been relying on her extensive education, training, and experience to testify that these jobs could be performed despite limitations on reaching overhead. The undersigned thus accepts the testimony of the vocational expert that these jobs could be performed within the residual functional capacity.

R. 29 (citation to record omitted). Although Plaintiff complains that the ALJ "simply assumed a resolution reached by pure conjecture," *Plaintiff's Statement of Errors*, ECF No. 11, PageID# 1450, the Court concludes that a fair reading of the ALJ's decision makes clear that the ALJ fully

complied with his obligations under SSR 00-4p and *Lindsley*. Plaintiff's first contention is without merit.

### B. The RFC Determination

Plaintiff also contends that the ALJ's RFC determination is internally inconsistent. Specifically, Plaintiff argues that the ALJ erred at step four of the sequential evaluation when he found an RFC for light work while at the same time also finding that Plaintiff could only occasionally use foot controls. "[Plaintiff] simply could not perform six (6) hours of standing and walking while be [sic] limited to occasional use of her feet to operate foot controls." *Plaintiff's Statement of Errors*, ECF No. 11, PageID# 1452.[6] This Court disagrees.

At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). In making that determination, the ALJ need include in the claimant's RFC only those limitations that the ALJ deems credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). However, the ALJ's RFC determination, like all findings of the ALJ, must be supported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.,* 312 Fed. Appx. 779 (6th Cir. 2009).

In this case, the ALJ found that Plaintiff had the RFC for light work with, *inter alia*, the additional limitation that she "could occasionally operate foot controls." R. 64. "Light work"

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

---

[6] Plaintiff does not address this contention in *Plaintiff's Reply*, ECF No. 14.

20 C.F.R. §§ 404.1567(b), 416.967(b). SSR 83-10 makes clear that the ability to operate foot controls is separate from the ability to meet the standing and walking requirements of light work: "A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work. . . ." SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983).

Plaintiff contends that it was "facially inconsistent" for the ALJ to limit her to a reduced range of light work when she could only occasionally operate foot controls. *Plaintiff's Statement of Errors*, ECF No. 11, PageID# 1451. However, Plaintiff's argument ignores the fact that an unrestricted ability to operate foot controls is not determinative of light exertion. SSR 83-10, 1983 WL 31251, at *5. "[L]ight work, by definition, may also be done by primarily sitting with some pushing and pulling of arm-hand or leg-foot controls." *Freeman v. Colvin*, No. 3:15-cv-216-HBG, 2016 WL 697140, at *5 (E.D. Tenn. Feb. 19, 2016). *See also Blankenship v. Comm'r of Soc. Sec.*, 624 Fed. Appx. 419 (6th Cir. 2015) (Affirming the Commissioner's decision that the claimant, who did not operate foot controls, nevertheless had the RFC for light work and was not disabled). Plaintiff's contention in this regard is without merit.

VI.     **CONCLUSION**

For these reasons, the Court **DENIES** *Plaintiff's Statement of Errors*, ECF No. 11, and **AFFIRMS** the Commissioner's decision.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date:  December 5, 2022                *s/Norah McCann King*
                                        NORAH McCANN KING
                                        UNITED STATES MAGISTRATE JUDGE